UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-80108-Cr-Hurley/Vitunac

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

ALFONSO DIAZ CARDENAS,

        Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE is before the Court on general Order of Reference from United States District Judge Daniel T.K. Hurley for disposition of all pending pretrial criminal motions. Pending before the Court is Defendant's Motion to Dismiss Indictment (DE 21), filed September 11, 2007. The Government filed a Response (DE 22) on September 25, 2007.

## Background

The Defendant is charged by indictment (DE 1) with being an individual required to register under the Sex Offender Registration and Notification Act, who traveled in interstate and foreign commerce, and knowingly failed to register as required by the Act, in violation of 18 U.S.C. § 2250. The offense underlying the instant indictment is alleged to have occurred in and around February 2007, in Palm Beach County, Florida. The indictment against the Defendant was returned and filed on July 17, 2007 (DE 1).

## Statutory Provisions

The Adam Walsh Child Protection and Safety Act of 2006 ("ACT"), was signed into

law on July 27, 2006. Title I of the Act, entitled the Sex Offender Registration and

Notification Act ("SORNA"), creates a federally mandated, national sex offender registry

law. See 42 U.S.C. § §16901-1692. SORNA is intended "to protect the public from sex

offenders and offenders against children" and to establish "a comprehensive national

system for the registration of those offenders." 42 U.S.C. §16901.

Subtitle (A) of SORNA establishes the program, definitions, and registration

requirements. SORNA defines the term "sex offender" as "an individual who was convicted

of a sex offense" and classifies all sex offenders into three different categories. 42 U.S.C.

§16911(1)-(4). SORNA requires that every jurisdiction maintain a sex offender registry

that conforms to certain statutory requirements. 42 U.S.C. §16912. SORNA specifies

when a sex offender must initially register and sets forth the sex offender's continuing

obligation to keep the registration current in 42 U.S.C. § 16913. The statute states in

pertinent part:

> (a) In general
> A sex offender shall register, and keep registration current, in
> each jurisdiction where the offender resides where the
> offender is employed, and where the offender is a student. For
> initial registration purposes only, a sex offender shall also
> register in the jurisdiction in which convicted if such jurisdiction
> is different from the jurisdiction of residence.
>
> (b) Initial registration
> The sex offender shall initially register - -
> (1) before completing a sentence of imprisonment with respect
> to the offense giving rise to the registration requirement; or
> (2) not later than 3 business days after being sentenced for
> that offense, if the sex offender is not sentenced to a term of
> imprisonment.
>
> (c) Keeping the registration current
> A sex offender shall, not later than 3 business days after each

2

> change of name, residence, employment, or student status,
> appear in person in at least 1 jurisdiction involved pursuant to
> subsection (a) of this section and inform that jurisdiction of all
> changes in the information required for that offender in the sex
> offender registry. That jurisdiction shall immediately provide
> that information to all other jurisdictions in which the offender
> is required to register.
>
> (d) Initial registration of sex offenders unable to comply with
> subsection (b) of this section
> The Attorney General shall have the authority to specify the
> applicability of the requirements of this subchapter to sex
> offenders convicted before July 27, 2006 or its implementation
> in a particular jurisdiction, and to prescribe rules for the
> registration of any such sex offenders and for other categories
> of sex offenders who are unable to comply with subsection (b)
> of this section. 42 U.S.C. § 16913.

SORNA Subtitle (A) mandates that states impose criminal penalties for violation of

its provisions. 42 U.S.C. § 16913. States and non-federal jurisdictions have three years

to implement SORNA. Failure of a state or non-federal jurisdiction to comply with SORNA

can result in a 10% reduction in federal justice assistance. 42 U.S.C. §6925(d).

Subtitle (B) of SORNA is titled "Improving Federal Criminal Law Enforcement To

Ensure Sex Offender Compliance With Registration and Notification Requirements and

Protection of Children From Violent Predators." This section of the Act amends Title 18

of the United States Code and creates a new federal crime for failure to register as a sex

offender. 18 U.S.C. § 2250(a). The federal failure to register statute provides:

> Whoever - -
> (1) is required to register under the Sex Offender Registration
> and Notification Act;
> (2)(A) is a sex offender as defined for purposes of the Sex
> Offender Registration and Notification Act by reason of a
> conviction under Federal law (including the Uniform Code of
> Military Justice), the law of the District of Columbia, Indian
> tribal law, or the law of any territory or possession of the
> United States, or
> (B) travels in interstate or foreign commerce, or enters or

3

> leaves, or resides in, Indian country; and
> (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act: shall be fined under this title or imprisoned not more than 10 years or both. 18 U.S.C. § 2250(a).

On February 28, 2007, the Attorney General issued an interim regulation concerning SORNA titled the "Applicability of the Sex Offender Registration and Notification Act" which states in pertinent part that:

> The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act.

## Defendant's Written Motion to Dismiss

The Defendant moves the Court to dismiss the instant indictment on nine grounds:

1.  SORNA's registration requirements are an unconstitutional exercise of Congress' authority under the Commerce Clause and §18 U.S.C. § 2250(a) is constitutionally defective because it "does not fall within any of the categories that Congress may regulate through the exercise of its power under the commerce clause."

2.  A defect in prosecution apparent on the face of the instant indictment exists because the indictment charges a violation of SORNA by virtue of a state court conviction, and SORNA does not criminalize failures to register by individuals convicted in state courts.

3.  SORNA was not expressly made retroactive by Congress so as to apply to individuals like the Defendant who "already had been convicted."

4.  Applied retroactively, SORNA violates the Ex Post Facto clause because it imposes punishment for an act not punishable at the time it was committed and increases the punishment for failing to register from a misdemeanor to a felony.

5.  The Attorney General rule which Defendant alleges purports to apply SORNA retroactively was promulgated absent notice and comment and therefore violates the Administrative Procedures Act ("APA").

6.  SORNA violates the constitutional non-delegation doctrine because it delegates to the Attorney General "the authority to specify the applicability of the requirements of this sub-chapter to sex offenders convicted before 7/27/06."

4

7.    SORNA violates Defendant's due process rights under the 5th Amendment because it makes it a crime to "knowingly fail to register or update a registration as required." Defendant's conviction occurred prior to SORNA's enactment, it was therefore impossible for him to "knowingly" fail to register as required.

8.    SORNA violates the 10th Amendment.

9.    SORNA impermissibly violates the right to travel "with no compelling government interest posited and none available in light of the requirements of each state."

The Government's Response

The Government maintains that the Defendant is a sex offender having been convicted in June 1993, for engaging in lewd and lascivious acts with a fourteen year old child, in violation of the California Penal Code. As part of the Defendant's sentence, the Defendant was required to register as a sex offender for the remainder of his life. The Government states that the Defendant received written notification of his obligation to register. Furthermore, the Government maintains that the Defendant did register as a sex offender in California in 1997, 1998, and 1999. According to the Government, each time the Defendant registered he affirmed "his understanding that he had a lifetime registration requirement and that he had a duty to update his registration and to inform law enforcement if he moved to any new domicile."

The Government contends that the Defendant has not updated his registration since 1999. Furthermore, the Government maintains that since the Defendant's last registration in 1999, the Defendant moved from California to Florida, back to California, then back to Florida in February 2007. The Government maintains that post Miranda, the Defendant admitted to law enforcement that he moved to Florida in February 2007. According to the Government, the Defendant explained to law enforcement that he did not register as a sex offender because he believed his obligation to register had expired.

5

The Government contends that Defendant's arguments have no merit, and therefore the Motion to Dismiss should be denied for the following reasons:

1.    Congress acted within its commerce clause powers in enacting SORNA.

2.    There is no defect in prosecution apparent on the face of the instant indictment.

3.    SORNA is not being applied retroactively for the following reasons: (1) Defendant admits SORNA became effective on July 27, 2006; and (2) the alleged offense underlying the indictment occurred after the effective date of SORNA when the Defendant traveled from California to Florida in February 2007 and failed to register.

4.    The application of SORNA penalties to the Defendant do not violate the Ex Post Facto clause because they are "not punitive, but a civil regulatory scheme with no punitive purpose or effect."

5.    Defendant's claim that SORNA violates the APA is irrelevant to the determination of applicability of SORNA.

6.    SORNA does not violate the non-delegation doctrine.

7.    SORNA does not violate Defendant's due process rights. Defendant's due process argument "has been uniformly rejected by every court that has addressed it."

8.    SORNA does not violate the 10th Amendment, because SORNA is a legitimate exercise of one of Congress' enumerated powers.

9.    SORNA does not violate Defendant's right to travel as "mere burdens on a person's ability to travel state to state are not necessarily a violation of their right to travel."

## Discussion

The Defendant presents nine issues before the Court. The first challenges the constitutionality of SORNA and 18 U.S.C. § 2250(a) under the commerce clause; the second alleges a defect in prosecution under the Federal Rules of Criminal Procedure; the third issue alleges that SORNA does not retroactively apply to sex offenders whose predicate convictions predate SORNA's enactment; the fourth claims SORNA and § 2250(a) violate the constitutional prohibition against Ex Post Facto laws; the fifth asserts

6

a violation of the Administrative Procedures Act; the sixth issue challenges the constitutionality of SORNA under the Non-delegation Doctrine; the seventh alleges a due process violation; the eighth challenges the constitutionality of SORNA under the 10th Amendment; and lastly, the ninth issue claims that SORNA impermissibly violates the constitutional right to travel.

The Court will first address Defendant's third, fourth and sixth issues challenging to the constitutionality of SORNA based on Defendant's statutory interpretation that SORNA does not apply to sex offenders, like him, whose predicate convictions predate the Attorney General's February 28, 2007 rule extending SORNA's application. The Court will then consider the remainder of Defendant's contentions in the order set forth above.

<u>Application of SORNA to Sex Offenders Convicted Before July 27, 2006.</u>

The Defendant challenges the constitutionality of SORNA as applied to him, a sex offender convicted before July 27, 2006. Defendant's challenge threads together two statutory interpretations of SORNA.    First, Defendant interprets SORNA as "non-retroactive" and therefore not applicable to sex offenders convicted before its enactment. Second, Defendant interprets the interim rule promulgated by the Attorney General on February 28, 2007, as establishing the application of SORNA to sex offenders, like the Defendant, who were convicted before enactment of the statute. Based on this statutory interpretation, Defendant argues that Congress's grant of authority to the Attorney General in 42 U.S.C. § 16913(d) is unconstitutional under the Non-delegation Doctrine because it allows the executive branch to legislate "a criminal statute with no limits . . . on the exercise of [its] discretion."   Alternatively, Defendant argues that if the Court finds that SORNA applies to the Defendant without construction by the Attorney General in February 2007, then SORNA is unconstitutionally retroactive as an Ex Post Facto law.

7

The Court disagrees with Defendant's statutory interpretation of SORNA. The starting point of any analysis of statutory interpretation is the plain language of the statute. Hughey v. United States, 495 U.S. 411, 415 (1990). Eleventh Circuit precedent holds that "[i]n determining the meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." Anderson v. Singletary, 111 F.3d 801, 803 (11th Cir. 1997)(quoting Crandon v. United States, 494 U.S. 152, 158 (1990)). "We assume that Congress used the words in a statute as they are commonly and ordinarily understood, and we read the statute to give full effect to each of its provisions." United States v. McLymont, 45 F.3d 400, 401 (11th Cir. 1995). The Eleventh Circuit has established a canon of statutory construction that does not "look at one word or term in isolation," but instead looks to "the entire statutory context." United States v. McLemore, 28 F.3d 1160, 1162 (11th Cir. 1994).

Most statutes are ambiguous to some degree. Smith v. United States, 508 U.S. 223, 239 (1993). The Supreme Court in Smith provides statutory interpretation guidance:

> "[s]tatutory construction . . . is a holistic endeavor. A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme - because the same terminology is used elsewhere in a context that makes its meaning clear, or because only one of the permissible meanings produces a substantive effect that is compatible with the rest of the law." Smith, 508 U.S. at 233.

Applying these principles in the instant case, the Court first turns to the statutory language at issue. SORNA subchapter § 16913 is titled "Registry requirements for sex offenders." The statute states:

> (a) In general
> A sex offender shall register, and keep registration current, in each jurisdiction where the offender resides where the offender is employed, and where the offender is a student. For initial registration purposes only, a sex offender shall also

8

register in the jurisdiction in which convicted if such
jurisdiction is different from the jurisdiction of residence.

(b) Initial registration
The sex offender shall initially register - -
(1) before completing a sentence of imprisonment with
respect to the offense giving rise to the registration
requirement; or
(2) not later than 3 business days after being sentenced for
that offense, if the sex offender is not sentenced to a term of
imprisonment.

(c) Keeping the registration current
A sex offender shall, not later than 3 business days after each
change of name, residence, employment, or student status,
appear in person in at least 1 jurisdiction involved pursuant to
subsection (a) of this section and inform that jurisdiction of all
changes in the information required for that offender in the
sex offender registry.  That jurisdiction shall immediately
provide that information to all other jurisdictions in which the
offender is required to register.

(d) Initial registration of sex offenders unable to comply with
subsection (b) of this section
The Attorney General shall have the authority to specify the
applicability of the requirements of this subchapter to sex
offenders convicted before July 27, 2006 or its
implementation in a particular jurisdiction, and to prescribe
rules for the registration of any such sex offenders and for
other categories of sex offenders who are unable to comply
with subsection (b) of this section.  42 U.S.C. § 16913.

Subchapter 42 U.S.C. § 16913(a) is titled "In general" and speaks to the purpose

and breadth of SORNA. The plain language of 42 U.S.C. § 16913(a) requires all

individuals convicted of a sex offense to register in relevant jurisdictions, with no exception

for sex offenders whose predicate convictions predate SORNA. The plain language of 42

U.S.C. § 16913(a) does not make a temporal distinction as to the date of a sex offender's

conviction. Instead the statute "imposes its requirements on sex offenders, without

qualification . . . and the proper distinction for these purposes is between those who are

currently registered, and those who are not." United States v. Roberts, 2007 WL 2155750

at 2 (W.D. Va. July 27, 2007).

This interpretation is consistent with the express purpose of the statute - which is

to create a "comprehensive national sex offender registration system." 42 U.S.C. §16901.

The Court agrees with the rationale of the Hinen Court holding that:

> "Congress's primary motivation in enacting this legislation
> was to do what the defendant claims SORNA does not do-
> regulate all sex offenders, regardless of the dates of their
> convictions. Indeed, it was Congress's desire to create a
> comprehensive and uniform registration system among the
> states to ensure offenders could not evade requirements
> by simply moving from one state to another. It would be
> illogical for members of Congress to express concern that
> thousands of sex offenders who were required to register
> under state law were evading those registration
> requirements and then exempt those same offenders from
> SORNA." United States v. Hinen, 487 F. Supp.2d 747, 752-
> 753 (W.D. Va. 2007). [1]

The Court, following Eleventh Circuit rules of statutory construction, considered not

only "the particular statutory language" of § 16913(a) but also the design of SORNA "as

a whole" and "its object and policy." Singletary, 111 F. 3d at 803. Based on those maxims

the Court finds that 42 U.S.C. 16913(a) applies to all sex offenders without concern as to

the date of their predicate offense. SORNA was conceived as a comprehensive national

sex offender registry. See 42 U.S.C. § §16901-1692. To construe the plain language of

42 U.S.C. § 16913(a) so as preclude within its general scope all sex offenders convicted

before July 26, 2006 would simply defeat the express purpose of the statute.

The Court's analysis of the statutory language of SORNA is consistent with the

---

[1] The Hinen Court supported its holding, concerning the plain language application of SORNA to all sex offenders, with SORNA's legislative history which revealed the intention of Congress to create a comprehensive system of registration that grasped within its ambit hundreds of thousands of sex offenders not complying with state obligations to register. Hinen, 487 F. Supp. 2d at 753 n.5.

legislative history of the statute, which reveals that Congress was concerned that existing sex-offenders were taking advantage of state sex offender registration programs so as to evade registration requirements. Hinen, 487 F. Supp.2d at 753 n.5 (collecting citations to the Congressional Record). The language chosen by Congress in 42 U.S.C. 16913(a) is unambiguous; it clearly mandates that sex offenders register in relevant jurisdictions.

Here, it remains uncontested that the Defendant is a sex offender by virtue of his conviction in California for lewd and lascivious behavior with a fourteen year old child.[2] It also remains uncontested that as part of his sentence the Defendant has a lifelong obligation to register as a sex offender. Importantly, it remains uncontested by the Defendant that he affirmed his knowledge of his lifelong obligation to register when he registered as a sex offender in California in 1997, 1998, and 1999.

Accordingly, the Court finds that the plain language of SORNA confers upon the Defendant an obligation to register in relevant jurisdictions as of the date of SORNA's enactment. Specifically, Defendant is required to "register, and keep that registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). The Court finds that Defendant's third argument concerning the "non-retroactively" of SORNA is without merit.

### SORNA 42 U.S.C. 16913(d) and the Non-Delegation Doctrine

Next, Defendant attempts to defeat the statutory interpretation of 42 U.S.C. 16913(a) as applying to sex offenders without concern as to the date of their predicate

---

[2] The Defendant had the opportunity to rebut the Government's allegations concerning his conviction as a sex offender, his lifelong obligation to register as a sex offender, his prior registration in California, his interstate travel after enactment of SORNA, his failure to register in Florida, and his post Miranda statements. The Defendant chose not to exercise his right to file a Reply to rebut these contentions.

11

offense, by relying on SORNA section 42 U.S.C. 16913(d) to modify and narrow 42 U.S.C.

16913(a) so that it applies only to sex offenders convicted after enactment of SORNA. The

Court finds this statutory interpretation similarly without merit.

SORNA section 42 U.S.C. 16913(d) is titled "Initial registration of sex offenders

unable to comply with subsection (b) of this section" and states:

> (d) Initial registration of sex offenders unable to comply with
> subsection (b) of this section
> The Attorney General shall have the authority to specify the
> applicability of the requirements of this subchapter to sex
> offenders convicted before July 27, 2006 or its
> implementation in a particular jurisdiction, and to prescribe
> rules for the registration of any such sex offenders and for
> other categories of sex offenders who are unable to comply
> with subsection (b) of this section. 42 U.S.C. § 16913.

Defendant maintains that 42 U.S.C. § 16913(d) plainly states that the "Attorney

General shall have the authority to specify the applicability of the requirements of this

subchapter to sex offenders convicted before July 27, 2006." Based upon his

interpretation, Defendant argues that SORNA violates the Non-delegation Doctrine

because it impermissibly delegates legislative authority to the Attorney General.

A close examination of the text of 16913(d), and the subchapter's placement in the

statutory scheme provides guidance. The text consists of two clauses. The first clause

states "[t]he Attorney General shall have the authority to specify the applicability of the

requirements of this subchapter to sex offenders convicted before July 27, 2006 or its

implementation in a particular jurisdiction." In isolation, this clause, 42 U.S.C. § 16913(d),

appears to suspend application of SORNA's registration requirements on sex offenders

convicted before the statute's enactment until such time as the Attorney General so

specifies. The Court is reminded that statutory construction is an holistic endeavor. Smith,

508 U.S. at 233. Such an interpretation of § 16913(d) would produce a substantive effect

that is not compatible with the rest of the law. Id. Additionally, such an interpretation would not give full effect to 16 U.S.C. 16913(a), which requires a sex offender to register without regard to any construction of the statute by the Attorney General. Eleventh Circuit rules of statutory interpretation require the Court to read the statute to give "full effect to each of its provisions." McLymont, 45 F.3d at 401. The Court finds that, standing alone, 42 U.S.C. 1613(d) is unambiguous. However, to give full effect to each provision, and to read the statute as a whole, the text of 42 U.S.C. § 16913(d) requires clarification in context to the statutory scheme and its subchapter title heading.

The heading or title of a federal statute cannot trump the plain meaning of the text. Essex Ins. Co. V. Zota, 466 F.3d 981, 989 (11th Cir. 2006). Eleventh Circuit precedent allows titles and section headings to be used for interpretive purposes only when "they shed some light on some ambiguous word or phrase." Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co., 331 U.S. 519, 528-529 (1947). See also United States v. Ferreira, 275 F. 3d 1020, 1029 (11th Cir. 2001). Section headings and titles "are but tools available for the resolution of doubt." Id. A court will look beyond the plain language of a statute "at extrinsic materials to determine congressional intent if: (1) the statute's language is ambiguous; (2) applying it according to its plain meaning would lead to an absurd result; or (3) there is clear evidence of contrary legislative intent." Consolidated Bank, N.A. v. Office of Comptroller of Currency, 188 F.3d 1461, 1463-64 (11th Cir. 1997).

Here, once the subchapter title of 42 U.S.C. § 169139(d) which states "Initial registration of sex offenders unable to comply with subsection (b) of this section" is read in unison with the text it becomes apparent that Congress's purpose in this section is to harmonize into the comprehensive national sex offender system 50 disparate state systems. Such an interpretation of 42 U.S.C. 16913(d) does not trump the plain meaning

13

of the text. Zota, 466 F.3d at 989.

Congress's challenge to create a uniform and comprehensive national system was considerable. To be effective, SORNA had to reach sex offenders subject to its registration requirements and convicted prior to enactment of the statute, who had no state obligation to register as a sex offender. Hinen, 487 F. Supp. 2d at 742 n4. SORNA also had to reconcile its application to persons convicted of crimes labeled "sex offenses" by certain states, which are outside the express intent of the statute, such as homosexual offenses - which are labeled "sex offenses" in at least four states. Id. Lawrence v. Texas, 539 U.S. 558, 575-576 (2003). In that context, the grant of authority to the Attorney General in 42 U.S.C. § 16913(d) to specify the initial registration requirements of sex offenders unable to comply with subsection(b) and the applicability of SORNA to persons convicted before the statute's enactment or in a particular jurisdiction is consistent: (1) with the statutory scheme, (2) does not lead to an absurd result and (3) is harmonious with the legislative intent of the statute. Consolidated Bank, N.A., 188 F.3d at 1463-1464.

In the present case, the plain language of SORNA requires the Defendant, a sex offender pursuant to SORNA definition, to register without regard to any construction of the statute by the Attorney General. Having already initially registered as a sex-offender the Defendant is "unambiguously required by subsections (a) and ( c)" of SORNA to keep his registration current. Roberts, 2007 WL 2155750 at 2. The Attorney General provision at issue, 42 U.S.C. § 16913(d), is concerned exclusively with initial registration, thus, the Defendant having already made initial registration into a state sex offender registry is not a person to which this provision applies. The Defendant, therefore, lacks standing to raise a Non-Delegation challenge to SORNA based on the Attorney General's interim rule.

In an analogous case, our sister court found that a Defendant convicted of a sex

offense prior to enactment of SORNA, who had been initially notified of his obligation to register, and then traveled in interstate commerce after SORNA's enactment, lacked standing to raise the Non-delegation issue. United States v. Gonzales, 2007 WL 2298004 at 12 (N.D. Fla. August 9, 2007). This Court agrees with the persuasive reasoning of Gonzales which states " the [d]efendant has not been charged under rules promulgated by the Attorney General; rather, defendant has been charged by Congress and its legislative mandate that is codified in §2250." Id. Based on the Court's finding that Defendant's prosecution arises from a plain reading of the statute and not by construction of the Attorney General's interim rule, and the holding in Gonzales, the Court finds that the Defendant lacks standing to raise the Non-delegation issue.

Alternatively, even if the Defendant did have standing to raise the Non-Delegation issue, the Court finds the argument without merit for the following reasons. First, the authority granted to the Attorney General in 42 U.S.C. 16913(d) is limited to narrowly prescribed circumstances. Specifically, the Attorney General is authorized to promulgate rules which apply to "initial registration of sex offenders unable to comply with subsection (b) of this section." Here, Congress's delegation of authority to another branch of Government is proper because "Congress clearly delineates the general policy, the public agency to which the authority has been given, and the limits of that authority." United States v. Mistretta, 488 U.S. 361, 372-373 (1989).

Second, Defendant's claim that Congress unconstitutionally delegated legislative authority to the Attorney General has been rejected by our sister courts and numerous other courts across the nation, under similar factual circumstances. See United States v. Madera, 474 F. Supp. 2d. 1257 (M.D. Fla. 2007); United States v. Kelton, 2007 WL 2572204 (M.D. Fla. Sept. 5, 2007); United States v. Gonzales, 2007 WL 2298004 (N.D.

Fla. Aug. 9, 2007); United States v. Mason, 2007 WL 1521515 (M.D. Fla. May 22, 2007);

See also United States v. Hinen, 487 F. Supp. 2d 747 (W.D. Va. 2007).

## Ex Post Facto Clause

The Defendant next argues that if SORNA and 18 U.S.C. 2250(a) are found to

apply retroactively they violate the Constitution's ban on ex post facto laws because: (1)

if convicted, the Defendant will be punished for a crime committed before SORNA was

enacted; and (2) SORNA increases the punishment for failing to register from a

misdemeanor to a felony. The Court disagrees.

The Ex Post Facto clause of the Constitution provides that "[n]o Bill of Attainder or

ex post facto law shall be passed." U.S. Const., art. I, § 9, cl. 3. A law "which imposes a

punishment for an act which was not punishable at the time it was committed; or imposes

additional punishment to that then prescribed" violates the Ex Post Facto clause. Weaver

v. Graham, 450 U.S. 24, 28 (1981). To violate the Ex Post Facto clause a statute "must

be retrospective, that is, it must apply to an event occurring before its enactment, and it

must disadvantage the offender affected by it." Weaver, 450 U.S. at 29.

Here, SORNA does not criminalize the fact that the Defendant committed a sex

offense prior to the statute's enactment. To the contrary, 18 U.S.C. 2255(a) criminalizes

Defendant's conduct after the enactment of SORNA on July 27, 2006, when the Defendant

became subject to federal jurisdiction, by traveling in interstate commerce and then failing

to register as a sex offender as required by SORNA.

As to Defendant's second challenge under the Ex Post Facto clause, Defendant

argues that SORNA adds a new, harsh federal penalty for failure to register which is

punitive in nature because it increases the penalty the Defendant may suffer if convicted.

However, "the constitutional prohibition on ex post facto laws applies only to penal statutes

which disadvantage the offender affected by them." Collins v. Youngblood, 497 U.S. 37,

41 (1990)(citing Calder v. Bull, 3 Dall. 386, 390-392 (1978)). Recently, the Supreme Court

found that a state sex offender registration and notification statute strikingly similar to

SORNA did not offend ex post facto jurisprudence.[3] Smith v. Doe, 538 U.S. 84, 93-94

(2003). In Smith, the Supreme Court established the following test for ex post facto

violations:

> "[w]e must ascertain whether the legislature meant the
> statute to establish civil proceedings. If the intention of the
> legislature was to impose punishment, that ends the inquiry.
> If, however, the intention was to enact a regulatory scheme
> that is civil and non punitive, we must further examine
> whether the statutory scheme is so punitive either in purpose
> or effect as to negate the State's intention to deem it civil.
> Because we ordinarily defer to the legislature's stated intent,
> only the clearest proof will suffice to override legislative
> intent and transform what has been denominated a civil
> remedy into a criminal penalty." Id.

In the present case, both the plain language of SORNA and the legislative history

of the statute support a finding that Congress's intent was to enact a regulatory scheme

that is civil and non-punitive. See 42 U.S.C. § §16901-1692. SORNA's stated purpose is

"to protect the public from sex offenders and offenders against children" and to establish

"a comprehensive national system for the registration of those offenders." 42 U.S.C.

§16901. Like the Alaska statute in Smith, SORNA was entirely codified in a section of the

code, civil in nature, which is devoted to "Public Health and Welfare," with the exception

---

[3] SORNA varies from the Alaska state in Smith in "only one respect."   See
Templeton, 2007 WL 445481, at 5 n.5. That distinction is the requirement under SORNA
of sex offenders to periodically appear for an updated photograph and to verify
information. Id. The Alaska statute has no such requirement. SORNA's requirement that
the registrant personally appears to update information does not transform SORNA into
a punitive statute. Id.

of the new federal failure to register crime which is codified in Title 18. The preponderance

of SORNA relates to a national registration system that cures defects in the state systems

and provides uniformity in the management of sex offender registration information. For

these reasons, this Court finds that SORNA is a civil, non-punitive law.

Next, the Court inquires whether despite being civil and non-punitive, SORNA is so

punitive in purpose or effect so as to negate Congress's intention to deem it civil. This

issue was ably discussed in Hinen:

> "[o]nly the clearest proof will suffice to override legislative
> intent and transform what has been denominated a civil
> remedy into a criminal penalty. After evaluating several factors
> to determine whether the effects of a sex offender registration
> requirement were unduly punitive, the Smith court concluded
> that sex offender registration requirements are not so punitive
> as to negate the legislature's intent that they be nonpunitive.
>
> Undertaking a similar analysis is unnecessary . . . since the
> effects of the federal registration requirements are nearly
> identical to those involved with the Alaska statutory scheme at
> issue in Smith, I am bound to follow Smith's conclusion that the
> effects of sex offender registration requirements do not negate
> legislative intent that such registration be nonpunitive." Hinen,
> 487 F. Supp. 2d at 756, 757.

This Court agrees with the persuasive reasoning of our sister courts finding that

SORNA does not violate the ex post facto clause.[4] United States v. Madera, 474 F.

Supp.2d 1257 (M.D. Fla. 2007)(holding that Congress put forth a legitimate nonpunitive

purpose of public safety in SORNA; United States v. Mason, 2007 WL 1521515 (M.D. Fla.

May 22, 2007)(holding that the ex post facto challenge is without merit because there is

---

[4] District Courts in other circuits have determined that SORNA violates the ex post
facto clause. United States v. Gill, 2007 WL 3018909 (D. Utah Oct. 15, 2007), United
States v. Cole, 2007 WL 2714111 (S.D. Ill. Sept. 17, 2007)(holding that as applied to a sex
offender who traveled in interstate commerce after the enactment of SORNA but before
the Attorney General's interim rule of February 28, 2007, the ex post facto clause is
violated.)

insufficient evidence to transform SORNA from a civil scheme into a criminal penalty); United States v. Kelton, 2007 WL 2572204 (M.D. Fla. Sept. 5, 2007)(rejecting Defendant's ex post facto challenge based on the line of decisions finding the statute constitutional). United States v. Gonzales, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007)(finding Defendant's ex post facto claim to be without merit.); United States v. Ambert, 2007 WL 2949476 (N.D. Fla. October 10, 2007)(holding that the statute was not ex post facto as to Ambert).

## Commerce Clause Violation

The Commerce Clause grants Congress the power "to regulate commerce with foreign Nations, and among the several states." U.S. Const. Art. I. §8, cl. 3. The power to regulate commerce between the states includes the power to regulate: (1) "the use of channels of interstate commerce;" (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come from intrastate activities;" and (3) "those activities having a substantial relation to interstate commerce." United States v. Lopez, 514 U.S. 549, 558-59 (1995). Only a "rational basis" must exist for concluding that the activity legislated substantially affects interstate commerce. Gonzales v. Raich, 545 U.S.1, 17, 22 (2005). When a jurisdictional predicate is present in a statue, the "substantially affects" test is inapplicable and the Government need only show a minimal effect on interstate commerce. U.S. v. Hinen, 487 F. Supp. 2d at 758.

In the present case, Defendant argues that SORNA's registration requirements, as set forth in Subtitle (A), violate the commerce clause because they do not fall in any of the three categories of commerce subject to regulation by Congress. However, Defendant's facial challenge is without merit because Subtitle (A) of SORNA does not create and impose federal criminal penalties. To the contrary, Subtitle (A) sets forth the definitions and requirements of the sex registry and notification act program and mandates that states

19

impose criminal penalties for violation of its provisions. 42 U.S.C. § 16913.   States are encouraged to comply with SORNA's comprehensive national program to avoid reduction in federal funding. 42 U.S.C. §6925(d).  Incident to Congress's spending power, "Congress may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives." South Dakota v. Dole, 483 U.S. 203, 206 (1987).  Here, Congress has offered encouragement to the States to enact a comprehensive sex offender registration and notification program. However, it remains the prerogative of the States to implement SORNA.  The Court concludes that the encouragement to state action found in SORNA is a valid constitutional use of Congress's spending power.

Next, Defendant argues that 18 U.S.C. § 2250(a) is unconstitutional under the commerce clause because the regulated activity under 2250(a) "does not fall in any of the three broad categories" that Congress may regulate.  The Court disagrees.  Subtitle (B) of SORNA mandated that Title 18 be amended to create a new federal crime for failure to register as a sex offender.  The Defendant is charged with violating the new federal failure to register crime, which gained jurisdiction over the Defendant as the result of his travel in interstate commerce. 18 U.S.C. 2250(2)(B).  It remains uncontested by the Defendant that he is a convicted sex offender. It is further uncontested by the Defendant that he traveled in interstate commerce, in and around February 2007.  By imposing registration requirements upon sex offenders, like the Defendant, who travel in interstate commerce, SORNA fits squarely within Congress's power to "regulate those individuals or things that travel in interstate commerce without regard to the reason for their movement." United States v. Lopez, 514 U.S. at 558. Our sister courts have consistently found SORNA and

18 U.S.C. 2250(a) to be valid exercises of Congress's power under the Commerce Clause. See United States v. Ambert, 2007 WL 2949476 (N.D. Fla. 2007); United States v. Kelton, 2007 WL 2572204 (M.D. Fla. 2007); United States v. Gonzales, 2007 WL 2298004 (N.D. 2207); United States v. Mason, 2007 WL 1521515 (M.D. Fla. 2207); United States v. Madera, 474 F. Supp. 2d 1257 (M.D. Fla. 2007).

## Defect in Prosecution

The Defendant argues that as a matter of law 18 U.S.C. 2250(a) cannot be applied to him as the statute "only criminalizes failures to register" by individuals convicted under Federal, Indian, tribal and laws of any U.S. territory or possession. The Court agrees with the Government that the Defendant misreads the plain language of the statute.

The statute sets out three elements which must be met for violation to occur. The first element requires the Defendant to be a sex offender subject to registration under SORNA. 18 U.S.C. 2250(a)(1). The second element establishes federal jurisdiction by reason of conviction under federal law or because the Defendant travels in interstate or foreign commerce. 18 U.S.C. 2250(a)(2)(A) and 2(B). The third element of the offense requires that the Defendant knowingly fails to register or update a registration as required. 18 U.S.C. 2250(a)(3).

In the present case, the indictment alleges all three elements of the offense: (1) that the Defendant is an individual required to register as a sex offender, (2) that the Defendant traveled in interstate commerce, and (3) that the Defendant knowingly failed to register. (DE 1). An indictment is sufficient if it contains the essential elements of the offense so that it fairly informs the defendant of the charge against him and it adequately enables the defendant to be protected against further prosecution for the same offense. United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985); United States v. Broome, 628 F.2d 403, 405

(5th Cir. 1980). The instant indictment tracks the wording of the charging statute, cites to the statute, and contains all elements of the crime. The Court finds that the instant indictment is sufficient as it contains all three of the essential elements of the offense and satisfies the notice requirements of Federal Rule of Criminal Procedure 12(b).

## Administrative Procedures Act

Defendant claims that the regulation promulgated by the Attorney General "which purports to make section 2250(a) apply retroactively" to him is invalid as it was created absent notice and comment required by the Administrative Procedures Act ("APA"). Defendant's claim is without merit because the Court has determined that the Attorney General's interim rule of February 28, 2007 is not material to Defendant's prosecution.

## Due Process Violation

Defendant argues that his due process rights under the 5th Amendment have been violated because 18 U.S.C. § 2250(a) criminalizes his failure to do something which he had no notice or knowledge of, therefore fundamental fairness requires the indictment against him to be dismissed. The Court finds this argument totally devoid of merit.

Both substantive and procedural due process challenges against SORNA have been uniformly rejected by our sister courts. United States v. Kelton, 2007 WL 2572204 (M.D. Fla. Sept. 5, 2007); United States v. Mason, 2007 WL 1521515 (M.D. Fla. May 22, 2007); United States v. Gonzales, 2007 WL 2298004 (N.D. Fla. Aug. 9, 2007).

The Roberts court, under analogous circumstances, rejected Defendant's due process challenge to SORNA and stated:

> "[f]ew offenders have ever had relevant sections of the U.S. Code read to them before committing their crimes, yet they are expected to comply with it even so. Owners of firearms, doctors who prescribe narcotics, and purchasers of dyed diesel are all expected to keep themselves abreast of

changes in the law which affect them, especially because such people are on notice that their activities are subject to regulation." <u>Roberts</u>, 2007 WL 2155750 at 2.

Here, Defendant's due process challenge amounts to a claim that ignorance of the law excuses non-compliance. Defendant's argument is unavailing to him, as it remains uncontested that the Defendant has a lifelong obligation to register as a sex offender. The indictment itself alleges sufficient facts to support Defendant's prosecution. Defendant's allegations concerning his "knowledge" of his obligation to register as sex offender is a factual issue for trial. The Court agrees with the persuasive reasoning of our sister courts and finds that SORNA does not violate substantive or procedural due process.

Encroachment upon State Power

The Defendant contends that SORNA violates the 10th Amendment by mandating that local sex offender registries accept federally required sex offender registrations. This argument is devoid of merit for two reasons. First, Defendant misreads SORNA. SORNA Subtitle (A) mandates that states impose criminal penalties for violation of its provisions. 42 U.S.C. § 16913. SORNA creates a three year window for states and non-federal jurisdictions to implement SORNA. Failure to comply with the conditions set forth in SORNA by a state or non-federal jurisdiction can result in a 10% reduction in federal justice assistance. 42 U.S.C. §6925(d). States are encouraged to comply with SORNA's comprehensive national program to avoid reduction in federal funding. 42 U.S.C. §6925(d). Incident to Congress's spending power "Congress may attach conditions on the receipt of federal funds." <u>Dole</u>, 483 U.S. at 206. Here, Congress has offered encouragement to the States to enact SORNA's provisions. It remains the prerogative of the States to implement SORNA.

23

Second, the Court has determined that SORNA is a legitimate exercise of Congress's Commerce power and there can be no violation of the 10th Amendment when Congress acts "under one of its enumerated powers." United States v. Williams, 121 F.3d 615, 620 (11th Cir. 1997). SORNA does not violate the 10th Amendment.

### Right to Travel

The Defendant argues that SORNA impermissibly violates the right to travel with no compelling Government interest posited and none available in light of the requirements of each state. The Court concurs with the Government that Defendant's argument is effectively foreclosed by Eleventh Circuit precedent in Doe v. Moore, 410 F. 3d 1337, 1349 (2006). In Moore, the Eleventh Circuit determined that Florida's sex offender notification act did not infringe the right to travel because "mere burdens" on a person's ability to travel from state to state are not necessarily a violation of their right to travel. Id. The "interest a state has in protecting the children" of the state and in "preventing future sexual offenses" is significant enough to outweigh the inconvenience or burden of a person being required to sign an offender registration form after relocating to a new state." Id. According, the Court finds that SORNA does not violate the constitutional right to travel.

### Recommendation

For the reasons stated above, this Court recommends to the District Court that the Defendant's Motion to Dismiss Indictment (DE 21), filed September 11, 2007, respectively be DENIED.

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Daniel T. K. Hurley, within ten (10) days after being served with a copy. See 28 U.S.C. § 636(b)(1)(C). Failure to file timely objections may limit the scope of appellate review of factual findings

contained herein.  See United States v. Warren, 687 F.2d 347, 348 (11th Cir. 1982) cert.

denied, 460 U.S. 1087 (1983).

DONE and SUBMITTED in Chambers at West Palm Beach in the Southern District

of Florida, this _____ day of November, 2007.


ANN E. VITUNAC
UNITED STATES MAGISTRATE JUDGE

Copies to:
Honorable Daniel T.K. Hurley
AUSA A. Marie Villafana
FPD Neison M. Marks